THE RICHMOND. THE IOWA. THE JAMES W. ELWELL. THE BOSWELL.

(District Court, S. D. New York. February 9, 1906.)

COLLISION—MEETING TOWS AND OVERTAKING SCHOONER—FAULT OF TUG.

　　The tug Boswell, with four barges in tow tandem, the whole being over 5,000 feet in length, proceeding from Boston to Newport News, when off the New Jersey coast, at night, sighted nearly ahead the tug Richmond, with two tows approaching on nearly an opposite course and also the lights of the schooner Elwell to the right of the Richmond. The Boswell was on about a southwest course, and her tows, which were light, sagged to port on account of a northwest wind; the last being from one-fourth to one-half a mile off the tug's course. The Boswell either maintained her course or ported and passed on the port side of the Richmond and of the Elwell, which was overtaking and passing the Richmond's tow, the result being to pocket the Elwell owing to the sagging of the Boswell's tow, and to escape she crossed the tow line of the Richmond, which had stopped, coming in collision with the bow of the first

tow, and also bringing about a collision between the Richmond's second tow and the last tow of the Boswell. *Held*, on the evidence, that the Boswell was solely in fault in that, under the circumstances, she did not pass to the starboard of the Richmond and so keep out of the schooner's way.

[Ed. Note.—Collision—Overtaking vessels, see note to The Rebecca, 60 C. C. A. 254.]

Admiralty. Collision · off Tucker Beach Light, New Jersey coast, between a schooner and a barge in tow of the tug Richmond and a subsequent collision, due to the first, between a barge in a tow of same tug and one in tow of the tug Boswell. Held, that the Boswell was in fault for all the damages, for failing to avoid the schooner with her tow.

Wing, Putnam & Burlingham, for the Baker Transportation Company.

Butler, Notman & Mynderse, for the Boswell.

Moen & Kilbreth, for the Richmond, the Iowa and the Indiana.

Robinson, Biddle & Ward and William S. Montgomery, for the Elwell.

ADAMS, District Judge. These actions arose out of a double collision which occurred off Tucker Beach Light, New Jersey, about 10 o'clock in the evening of the 22d of October, 1904. The tug Boswell, with 4 light barges in tow tandem, the Annie, Daisie, Dempsey and Powel, was proceeding from Boston to Newport News. The length of the tow was about 5,047 feet. The tug Richmond, with two coal laden barges in tow tandem, the Indiana and Iowa, was proceeding from Newport News to Providence and Boston. The length of this tow was about 2,693 feet. The 4-masted schooner James W. Elwell, laden with coal, was bound from Philadelphia to Portland, Maine. The wind was about north-west. The general course of the Boswell was the same as the trend of the shore, at that point, about south-west. The general courses of the Richmond and of the Elwell were about north-east. The Boswell was making about 4 miles per hour. The Richmond was making 6½ miles per hour and the Elwell, under full sail, about 8 miles. The latter was overtaking the Richmond and passing her, to the westward, at about the rate of 1½ miles an hour. There is some dispute as to the positions of the vessels with relation to each other, the Boswell and Richmond contending that they were so situated as to pass safely port to port, without change of helm, and that the Elwell by maintaining her course, would have passed safely to the westward of all the vessels but that she changed to the starboard and crossed the course of the Boswell. The Elwell contends that the Boswell and Richmond were to the starboard of each other and changed to pass port to port, thus creating an embarrassing position for her when she was only a short distance, ¼ of a mile, distant from the Richmond's tow, and to escape collision with the Boswell's tow, she was obliged to sail over the hawser leading from the Richmond to the Indiana, the former having stopped and allowed the hawser to sink, whereby a collision was caused between the starboard side of the Elwell, near the stern, and the bow of the Indiana

and a further collision between the Iowa and the Powel, the stern barges of the respective tows, caused by the Iowa changing to port and getting ahead of the Powel, which struck the Iowa with her stem on the Iowa's starboard side. It was a clear moonlight night.

1. The litigation was commenced by the Baker Transportation Company, the owner of the Powell, filing a libel against the Richmond and the Iowa, alleging fault against the Richmond in not keeping a good lookout, in not giving the Boswell's tow a wide enough berth, in not standing by and in not heeding the hails of the Powel, and against the Iowa in not keeping a good lookout, in starboarding her helm and taking a rank sheer to port, in not heeding the hails of the Powel, and in not giving her name as required by law.

The Seaboard Transportation Company, the owner of the Richmond and of the Iowa, filed an answer alleging:

"About 10 P. M. the tow was off Tucker Beach Light heading on a course about northeast by north. Shortly before a southbound tow, which subsequently proved to be the tug Boswell with four barges, of which the Powel was the last, in tow in tandem, was made out, bearing about northeast. The Boswell passed the Richmond and her tow to port close to, but meanwhile the schooner James W. Elwell, which had been overtaking the Richmond and her tow, under full sail and at a high speed, attempted to proceed and pass on between the Boswell and her tow and the Richmond and her tow. In so doing and apparently in order to avoid a collision with the Powel, which had taken a rank sheer to port, the Elwell suddenly changed her course, heading toward the Indiana. The engines of the Richmond were stopped and the Indiana put her wheel hard over in order to avoid or make the blow of the the imminent collision as light as possible. The Elwell struck the Indiana on the bluff of her port bow causing serious damage, and passed on across her bar stem and over the slack hawser to leeward. In order to avoid collision with the Indiana or the Elwell, the Iowa changed her course to port and upon seeing herself clear of them put her wheel hard over to resume her original course again. Meanwhile the Powel having taken a rank sheer to port instead of continuing on her proper course struck the Iowa head on on the starboard side forward of the fore-rigging, causing serious damage."

The Seaboard Company also filed a petition, alleging the same facts, and that:

"Fifth: On information and belief your petitioner further alleges that the collision complained of in the libel was caused or contributed to by the fault of the said tug Boswell, in the following particulars: (1) in that she did not keep a good lookout: (2) in that she did not pass the Richmond and her tow to starboard: (3) in that she did not give the Richmond and her tow a wide enough berth: (4) in that she did not stay by after the collision: (5) in other respects which will be shown at the trial.

Sixth: On information and belief your petitioner further alleges that the collision complained of in the libel was caused or contributed to by the fault and negligence of those in charge of the navigation of the said schooner James W. Elwell in the following particulars: (1) in that she did not keep a good lookout: (2) in that she did not pass to starboard of the Richmond's tow: (3) in that she attempted to pass between the tows of the Richmond and Boswell: (4) in that as an overtaking vessel she did not keep out of the way of the Richmond and her tow: (5) in that she did not stay by or give her name after the collision: (6) * * *."

The Boswell and the Elwell were accordingly brought into the action.

This action is the first of those entitled above.

2. An action was also brought by the Seaboard Company against the Powel, the owners of the Elwell (the Elwell afterwards came in and she was proceeded against instead of the owners) and the Boswell, in which the facts alleged as above in the proceedings by that company were again set forth, claiming damages for the injury to the Iowa.

This is the second of the above entitled actions.

3. An action was also brought by the Seaboard Company against the Elwell for the damages sustained by the Indiana in the collision. In this it was also alleged that the Boswell's tow was seen bearing north-east while the Richmond's tow was heading north-east by north. The claimants of the Elwell brought in the Boswell by petition, alleging:

"About 10 P. M., when between Absecon Light and Tucker Beach Light, the Elwell being under all sail, and steering a course about N. E. by N. those in charge of the Elwell saw the lights of a northbound tow, which afterwards proved to be the Richmond, with the barges Indiana and Iowa in tow, in the order named, on hawsers about 200 fathoms long. These lights were to starboard of said schooner, and the Elwell was overhauling them, as she was proceeding faster than the northbound tow.

'After the Elwell had passed the stern barge of the northbound tow, being to the westward of said tow, and expecting to pass along the port side of said tow, those in charge of her discovered the towing lights of a tug and tow bound south, which tug and tow afterwards proved to be the tug Boswell with four barges, the last of which was the Powel, in tow tandem on hawsers about 200 fathoms long. Shortly after, those in charge of the Elwell saw the green light of the Boswell showing that said southbound tow would pass the northbound tow starboard to starboard.

Shortly thereafter the southbound tug shut in her green light and showed her red light, crossing the bows of said northbound tug and tow, thereby pocketing the schooner Elwell.

The barges of said southbound tow being light were very high out of water, and the wind being fresh and nearly abeam of them, had the effect of sagging the barges of the southbound tow towards the northbound tow and the Elwell.

Thereupon the northbound tug, the Richmond, ported her helm, and stopped her engines, thus causing the hawser between said tug and the barge Indiana to trail in the water.

Those in charge of the Elwell, seeing that by the action of the southbound tug and tow in crossing the bows of the northbound tow she was pocketed, and that as a result of this and the wind's sagging the light barges to leeward there was great danger of the schooner's colliding with one of the after barges of the southbound tow, immediately, and in order to avert such collision, put the Elwell's helm up, and passed over the towing hawser and between the Richmond and Indiana, thus by an admirable piece of seamanship averting what would have been a disastrous head-on collision between herself and the stern barge of the southbound tow, the Powel, arriving to leeward of both tows without injury to herself, touching with her starboard quarter the stem of the Indiana, doing comparatively little damage to the latter.

Third: Said collision was not caused or in any way contributed to by any negligence on the part of those in charge of said schooner, but was caused by the negligence of the steamtug Boswell in the following among other particulars which will be shown at the trial:

(1) In that she did not keep a good lookout;

(2) In that she did not pass the Richmond and her tow starboard to starboard;

(3) In that she did not give timely warning of her change of course to cross the Richmond's bows;

(4) In that after crossing the Richmond's bows she did not see the position in which she had placed the Elwell, and did not take timely measures to pull to the northward and westward so as to allow the Elwell to pass clear of her stern barge;

(5) In that having a tow of four barges tandem on hawsers 200 fathoms long, she did not use the extreme caution and prudence necessary in handling such a tow."

The Boswell answered as follows:

"Ninth: Further answering, this claimant alleges that the circumstances preceding and attending the collision aforesaid were as follows:

On night of October 22nd, 1904, the steamtug Boswell was bound south from Boston for Hampton Roads, having in tow the barges Annie, Daisie, J. A. Dempsey, and Powel, in the order named, tandem. The wind was W. N. W. The Boswell was well manned, with a competent master and crew, and a lookout properly placed. The tug and barges had regulation lights properly placed and brightly burning.

When opposite Tucker's Beach Light and four miles from shore or thereabouts, and proceeding on a S. W. course, the towing lights of a tug were seen on the port bow, which proved to be the Richmond having in tow the barges Indiana and Iowa bound on a N. E. by N. course.

Shortly after sighting the Richmond, the green light of a four masted schooner was seen about two points on the Boswell's starboard bow. This schooner proved to be the James W. Elwell on a Northeasterly course making nine or ten knots an hour and gaining on the Richmond.

The Boswell held her course and passed abeam of the Richmond at a distance of nearly half a mile. Shortly thereafter, the schooner wrongfully and negligently altered her course so as to bring into view both her side lights. As soon as it became evident that she would not resume her former and proper course, the Boswell put her wheel hard a port and signalled to her tow to do the same. The schooner Elwell passed the Boswell port to port, electing apparently to follow the avenue of water between the two tows, where, as the claimant is informed and believes, there was sufficient, but not much more than sufficient space for the schooner to pass. But subsequently the schooner, when in close proximity to the Indiana, the Richmond's head barge ported her wheel in an attempt to cross the tow line of the Richmond and collided with the Indiana. Meanwhile the Iowa, the Richmond's tail barge, in seeking to avoid the schooner, wrongfully and negligently put her wheel hard a starboard and threw herself across the course of the barge Powel, the Boswell's tail barge, which, as claimant is informed and believes, had ported her wheel somewhat tardily after the Boswell's signal aforesaid.

In consequence of the manœuvres aforesaid, the bluff of the starboard tow '(bow)' of the Iowa was brought into collision with the port bow of the Powel, causing injuries, the extent of which is unknown to this claimant.

Tenth: The collision aforesaid was not due to any fault or error on the part of those in charge of and navigating the steamtug Boswell, but was due to faults and negligence on the part of the barges Iowa and Indiana, the tug Richmond, the schooner James W. Elwell, and the barge Powel, and the following particulars, among others, that will be shown at the trial.

As to the tug Richmond and the barges Iowa and Indiana:

(1)  In failing to keep a good lookout.

(2)  In not porting, when the schooner was plainly seeking to pass through the avenue of water between the two tows and thereby widening the same.

As to the barge Iowa:

(1)  In putting her wheel hard a starboard to avoid the Elwell and the Indiana instead of hard a port or slightly a starboard.

(2)  In not avoiding the Powel.

As to the tug Richmond:

(1)  In not discharging the duties of a burdened vessel by providing so ample a margin of clearance between the two tows, as would provide for the contingency of the schooner Elwell attempting to pass between.

As to the schooner James W. Elwell:

(1)  In failing to keep a good lookout.

(2) When she overtook and lapped the tow of the Richmond, in not taking a course to port or starboard thereof by so ample a margin as would enable her easily and safely to pass the Boswell and her tow, then already in sight.

(3) In that after lapping the tow of the Richmond, and seeing the Boswell's green light on her starboard bow, she did not hold her course and pass the Boswell starboard to starboard; and in that she ported and crossed the course of the Boswell and attempted to pass between the two tows.

(4) In that after passing the Boswell, port to port, she did not direct her course to the open avenue of water between the two tows and in that she attempted to cross the Richmond's towing hawser.

(5) In not reducing her speed by shortening sail, letting go her sheets or some of them or otherwise.

(6) In that when she attempted to cross the line of the Richmond's tows, she did not choose a point of crossing just abaft the Richmond or the Indiana, instead of a point just forward of the Indiana, rendering a collision with the Indiana inevitable.

(7) In that she did not, immediately upon clearing the Powel, starboard her wheel and luff up into the wind.

As to the barge Powel:

(1) In failing to keep a good lookout.

(2) In failing promptly to port her wheel when signaled by the Boswell to do so."

This is the last of the actions.

The principal controversy in the case seems to be whether the collisions were produced by an improper change of course on the part of the schooner, or whether she was forced to change her course to avert a collision with the Boswell's tow through the Boswell crossing the course of the Richmond and thus pocketing the schooner between the tows.

It appears that the Boswell's tow being light, was not following directly behind the tug, but was swung off to the eastward by the wind, so that the first barge was a little on the port quarter of the tug, the second and third each a little more and the fourth still more, the last barge being probably from a point to a point and a half to the leeward of the tug or from ¼ to ½ a mile. The course of the tug was southwesterly, as stated above, but, it is said, she was making good a course of S. W. by S. ¼ S.

The Richmond was steering a general northeasterly course but more exactly N. E. by N. ¾ N. The Elwell was also steering a general northeasterly course but more exactly N. E. by N.

According to the account of the matter given by the master of the Boswell, the Richmond and tow were seen slightly, ½ point to a point, on the Boswell's port bow 2 or 3 miles away and shortly thereafter the lights of the schooner were made from 1½ to 2 points on the starboard bow. The Boswell continued her course and when she reached a point abreast of the Richmond, and about ½ mile away, the schooner was from 1½ to 2 miles away, bearing 1½ to 2 points on the tug's starboard bow. At this time the Richmond saluted the Boswell but she did not answer because about this time the schooner yawed, giving a glimpse of her red light, whereupon the Boswell gave a signal of two blasts to the schooner, intending her to understand that the tug intended to keep her course and the vessels would pass starboard to starboard but the schooner kept off and showed both her red and green light and steered directly for the tug.

The Richmond's witnesses did not testify in conformity with her pleadings but sustained the contention of the Boswell that those vessels were in positions to pass port to port.

The schooner produced but one witness who was on deck, that was the mate, who was in charge of her navigation at the time. He testified in conformity with her pleadings.

Regarding the Richmond's testimony, it may further be observed that in the pleadings she several times. puts forward the claim that the Boswell at first was bearing north-east while the Richmond was heading north-east by north, consequently on the latter's starboard side, and the former was charged by the latter with fault for not passing on the starboard side. These pleadings not only discredit the subsequent testimony of the Richmond but sustain the schooner's contention with respect to the original positions of the vessels and must be considered in ascertaining the facts. The pleadings were verified by the treasurer of the Seaboard Company, who says in his affidavit that the sources of his information are statements made by the officers and crews of the Richmond, the Indiana and the Iowa. These statements were called for by the schooner but not produced. The pleadings of the Richmond do not, in giving its account of the matter, allege the change of course on the schooner's part, which is the principal subject of her contention with the Boswell. Altogether, the testimony given on the part of the Richmond does not aid very much in the solution of the difficulty.

The Boswell's testimony seems to be consistent with her pleadings in the general aspects of the case but is it reliable? Her contention is that the Elwell was far enough on her starboard hand so that if she kept her course, she would pass the Boswell safely starboard to starboard, yet in that situation changed to port, seeing which manœuvre, and persistence in it, the Boswell changed to the starboard, with the effect of getting a heading well to the westward. It is not probable but is sustained in some respects by the testimony of witnesses from her barges Annie and Dempsey and possibly the Daisie, while the Elwell has but one to directly support her story that the Boswell changed from a position to pass the Richmond to the eastward and thus cut off the Elwell. That was the mate of the schooner who was on deck in charge. The testimony from the Boswell's tow is not to be relied upon to a great extent because the barges were so far to the leeward of the tug that those on her did not have the same view. The witness from the Powel did not see the schooner in time to determine her relative positions to the Boswell before the latter changed her course to the westward.

It is evident that it would not have been possible for the Elwell had she been on the Boswell's starboard bow, to have overtaken the Indiana at the time claimed by the Boswell even if the Elwell were going at the rate of 10 knots, the utmost speed claimed for her, after all allowance made for the change of the Boswell's course and the stopping and reversing of the Richmond, whose tow kept going ahead, but under reduced speed, up to the time of the collision between the Elwell and the Indiana.

Another account of the matter given by the Boswell is that when the Elwell changed her course to the eastward, the Boswell was somewhere near the Iowa. Assuming that the Elwell passed very close ahead of the Boswell it would apparently have been impossible for the Elwell to have reached and collided with the Indiana, while the tows were still passing each other, yet that the first collision took place while such was the situation is not questioned.

The Elwell's navigation is severely criticized by the advocates of the Boswell and of the Richmond and there is much in their astute arguments to claim attention. It is urged that the Elwell had no lookout. It is testified on her part by the mate that she had one properly stationed and that he duly reported the approach of the Boswell, giving, on cross examination, the lights in the order in which they were seen, white, then green and then red, but he made no further reports, and the mate says that he did not need them and he was looking himself. He, however, admits that he did not see the Powel until the vessels were close together and explains it by saying that he did not expect there would be a fourth barge and the Richmond at first obscured the Powel. Even assuming the truthfulness of the testimony, it is evident that there was not such a fulfilment of the schooner's duty in this respect as might strictly be expected, as it is shown that it is not unusual for tows of 4 barges to be navigated, and everything ahead should have been seen and reported by the lookout, but did it actually affect the matter? It seems not, because when the vessels were in such a situation that it strictly became incumbent upon the Elwell to know of the presence of the Powel, she was already pocketed by the tows and there was apparently no escape for her except by endeavoring to get to the eastward over the hawser leading to the Indiana. The report of the Powel by the lookout at any time when it appeared that there was danger of collision with her would not apparently, in the exercise of ordinary skill and care on the Elwell's part and the due performance of her duty as a sailing vessel, have made any difference in the result. She saw the Powel in time to avoid collision with her, though not to avoid the Indiana, and bring about the other collision. It is also urged that the first false manœuvre on the part of the vessels was a change of course by the schooner, which exposed her red light to those on the Boswell, no prior change having been made by that vessel. If the Elwell's account of the matter is to be accepted, this is not true, the first change having been made by the Boswell for the purpose of crossing the Richmond's course from starboard to port. It is also urged that the Elwell was in fault for crossing the Richmond's hawser and should have passed astern of the Iowa. Of course, the Elwell was bound as an overtaking vessel to keep clear of the Richmond's tow but it was the Boswell's duty as a steam vessel to keep away from the Elwell and not to unduly embarrass her in pursuing her course. It is further urged, that those on the schooner concealed the fact of the collision. They apparently made no report of it because the master said he did not consider it of importance, but it was subsequently discovered by the Seaboard Company that the Elwell was the sailing vessel concerned in the matter, and an affidavit

was submitted to that Company showing the Elwell's account of the matter. This has not been offered in evidence and presumably it does not vary very materially from the account here given. Of course, the concealment on the part of the master and owners of the Elwell of her part in the matter was not consistent with perfect frankness, but the mate's testimony should not be affected by an apparent desire on their part to keep out of litigation, if that should be deemed a fault.

After giving the case the best consideration I can, I have concluded that the Elwell's version of the matter is entitled to be adopted for the reasons already given and because I was impressed with the truthfulness of the witness on her behalf.

It remains to be considered whether the Boswell alone or any of the other vessels should be held for the damages suffered. The Boswell contends that the Elwell was primarily in fault but that the Iowa should be condemned because she had no lookout and therefore did not know a fact which could easily have been ascertained, namely: that there was a 4th barge in the Boswell's tow. It does not appear how the presence of a lookout could have made any difference. Further, it is contended that she was in fault because she starboarded instead of porting, and to an unnecessary extent. As it appears now, very likely there were errors, but judging from the situation as it apparently existed at the time, they should not be so regarded, so as to throw any responsibility upon the Iowa, who did what appeared to be necessary at the time as the vessels were so close together.

The Richmond is perhaps subject to criticism for assenting to the Boswell's crossing her bow under the circumstances, but she could not know that the barges were following from ¼ to ½ a mile to leeward of the Boswell and at the time deemed the manœuvre safe as far as she herself was concerned. In any event, she stopped in time to permit all to get safely across so that no fault could be established against her, and the Boswell does not contend that she should be implicated.

Those suffering damages by the collision are entitled to a decree against the Boswell, with an order of reference. All the other libels and petitions will be dismissed.